**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO *EX REL*.
HECTOR BALDERAS, ATTORNEY
GENERAL,

      Plaintiff,

                                      Case No. 1:21-CV-00824-DHU-KK

v.

ROVIO ENTERTAINMENT
CORPORATION,

      Defendant.

**DEFENDANT ROVIO ENTERTAINMENT CORP.'S
REPLY IN SUPPORT OF ITS RULE 12(B)(1) AND 12(B)(6)
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT [DKT. 32]</u>**

Defendant Rovio Entertainment Corporation ("Rovio") files this Reply in Support of its Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Complaint (the "Motion").

## **INTRODUCTION**

The State's Response suffers from the same fundamental defects as its Complaint: it contains a number of generalized and conclusory assertions that not only lack specific factual support but also fail to connect the State's claims to any actual, identifiable New Mexico children under the age of 13. Indeed, the State repeatedly contends it has alleged specific facts to support its claims, but even a cursory review of the ***actual text*** of the Complaint plainly demonstrates otherwise. Rather than confront the Complaint's core deficiencies, the State's Response doubles down on the same mistakes. Much like the State's Complaint, the Response's Factual Background Section contains ***no*** concrete or particularized factual allegations relating to identifiable New Mexico children under the age of 13, nor does it support the State's exaggerated characterizations of the actual text of its Complaint. *See* Resp. at 3-5.

The State also mischaracterizes Rovio's Motion as asserting only "a series of limited challenges to the margins of the Complaint" and generally tries to distance its COPPA claim from its state-law claims. *See, e.g.*, Resp. at 1. To be clear, (i) Rovio asserts multiple jurisdictional arguments warranting the dismissal of the ***entirety*** of the State's COPPA, NMUPA, and intrusion upon seclusion claims (e.g., standing, preemption), and (ii) COPPA's preemption provision mandates that any dismissal of, or limitation to, the State's COPPA claim applies equally to its state-law claims (e.g., limitations, punitive damages, attorneys' fees). For these reasons, and those identified below and in its Motion, Rovio respectfully requests the Court grant its Motion and dismiss the State's claims in their entirety.

## ARGUMENTS & AUTHORITIES

### I.     The State Lacks Standing to Assert its COPPA Claim.

"It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Indeed, plaintiffs must "allege . . . *facts* essential to show jurisdiction. If they fail to make the necessary allegations, they have no standing." *FW/PBS*, 493 U.S. at 231 (emphasis added). Where, as here, a defendant challenges standing, a court must presume a lack of jurisdiction "unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)).

To establish *parens patriae* standing, the State must also specifically allege injury-in-fact to the citizens it purports to represent as *parens patriae* and that such injuries were experienced by "'a sufficiently substantial segment of its population.'" *Utah Div. of Consumer Prot. v. Stevens*, 398 F. Supp. 3d 1139, 1145 (D. Utah 2019); *accord Thiebaut v. Colorado Springs Util.*, 455 Fed. App'x. 795, 799 (10th Cir. 2011). The State does not dispute these governing *pleading* standards; instead, they attempt to confuse the issue by referring to an inapplicable pre-*Spokeo* Third Circuit decision dealing with the *type of harm* necessary to show an Article III injury, improperly conflating the two in the process. *See* Resp. at 5-6.

Here, the State has indisputably failed to meet the requisite pleading standards to establish Article III standing. *See Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001) ("[B]efore proving that they could satisfy these [*parens patriae*] requirements, the Tribes still must allege injury in fact *to the citizens they purport to represent* as

*parens patriae*." (emphasis added)); *Rosenblum v. Does 1-10*, 474 F. Supp. 3d 1128, 1133 (D. Or. 2020) (finding that *parens patriae* standing is "**an unusually high bar to clear**," and "[i]n order to assert *parens* standing, a state plaintiff must plead an injury **to its citizenry** that meets the usual Article III requirements—that it be 'be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" (emphasis added)).

Rather than address these shortcomings, the State's Response engages in obfuscation—describing, for example, a complaint that bears no resemblance to the one actually on file. According to the State, it is "crystal clear" that its Complaint "clearly alleges," *inter alia*, that (i) New Mexico children downloaded Rovio's games "over a million" times, (ii) New Mexico children played the Rovio's Angry Birds games and had their data misused in violation of COPPA, and (iii) New Mexico children have been adversely impacted by Rovio's alleged COPPA violations. Resp. at 6-7. The State purports to bolster its argument with lengthy string citations to paragraphs in its Complaint but conspicuously fails to directly quote from those paragraphs or provide targeted citations. Why? **Because the Complaint does not actually allege those things**.

Take, for example, the State's argument that its Complaint purportedly details how New Mexico children have "download[ed]" Rovio's Angry Birds games "over a million" times. Resp. at 6. The Complaint contains no such allegation. Instead, the Complaint merely alleges that Rovio's apps generally "have been downloaded . . . upon information and belief, over one million times or more in New Mexico," "have been downloaded over 4.5 billion times worldwide," and "were among the most addictive apps played by kids." *See* Compl. at ¶¶ 2-3, 38, 48. **None** of those statements provide concrete factual support for the State's conclusory allegation that any New Mexico children under the age of 13 actually downloaded or played Rovio's Angry Birds

games, let alone downloaded them "over a million" times.  Nor does the State identify with specificity **when or on what device** even a single under 13-age child in New Mexico downloaded any of Rovio's gaming apps or **whether** those allegedly impacted under 13-age children constitute a "sufficiently substantial segment" of New Mexico's population. The State's failure to properly plead particularized facts supporting an injury-in-fact to identifiable New Mexico children under the age of 13 is fatal to the State's ability to demonstrate Article III standing.

## II.    The State's COPPA Claim is Limited by Section 6502(c)'s Reference to the FTC Act.

### A.    The Court Must "Treat" the State's COPPA Claim Like an FTC Act Claim.

As shown below, the plain and unambiguous language in COPPA's enforcement provision, 15 U.S.C. § 6502(c), mandates that the Court treat the State's COPPA claim as it would an analogous claim under the FTC Act claim:

**15 U.S.C. § 6502[1]**

> **(c) Enforcement**
>    Subject to sections 6503 and 6505 of this title, a violation of a regulation prescribed under subsection (a) of this section shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under section 57a(a)(1)(B) of this title.

Unlike other similar federal statutes, *see* Mot. at 11-12 (chart), the plain language in Section 6502(c) makes **no** distinction based on which entity (i.e., the FTC, another federal agency, or state attorney general) is bringing an enforcement action under COPPA, nor does it expressly state that it does not apply to enforcement actions brought by state attorneys general.

---

[1] Emphasis added.

Rather than confront (or attempt to somehow distinguish) the plain language in Section 6502(c), the State instead acts as though that section of COPPA does not exist.[2]  According to the State, the only section of COPPA that applies to its claims is 15 U.S.C. § 6504—the provision which authorizes the State to file suit.  *See* Resp. at 7.  ***But that cannot be correct***, as it violates bedrock canons of statutory construction and also contradicts the State's other arguments:

- First, adopting the State's approach would require the Court to improperly read Section 6502(c) out of COPPA and ***violate*** "[o]ne of the most basic interpretive canons" that "'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004));

- Second, Sections 6504 and 6502 are indisputably tied together such that it would be improper to view them in isolation.  Indeed, Section 6502 is ***the section*** that makes it unlawful to collect personal information from a child in violation of COPPA.  15 U.S.C. § 6502(a)(1);[3] and

- Third, given that the State ***itself*** cites to other parts of Section 6502 in support of its preemption arguments, *see, e.g.*, Resp. at 14, 15, the State cannot, on the one hand, argue that Section 6502 does not apply to its claims while, on the other, attempt to rely on Section 6502 for support.[4]

In an effort to circumvent these inconvenient truths, the State simply speculates as to the meaning of Section 6502(c), but provides zero support for its purported interpretation.  *See* Resp.

---

[2] The State also fails to respond to Rovio's arguments and case law regarding Section 6502(c)'s plain text, COPPA's statutory framework, and the plain text and statutory interpretation of analogous statutes.  *See* Mot. at 8-13.  In this Court, "the failure to respond to an argument raised in a motion constitutes consent to grant the motion to the extent associated with that particular argument." *Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *15 (D.N.M. July 15, 2020).

[3] If, as the State suggests, Section 6502 does not apply to its claims, then the State's COPPA claim lacks any legal basis to proceed, and must be immediately dismissed.

[4] In its Response, the State directs the Court to the pleading filed by the plaintiffs in *Federal Trade Commission, et al. v. Google LLC et al.*, No. 1:19-cv-02642 (D.D.C. Nov. 4, 2019), as somehow relevant to this issue.  Resp. at 8.  ***It is not***.  How those plaintiffs chose to plead their claims in that case (which were not construed by the court there) is irrelevant to the court's analysis and construction of relevant COPPA provisions at issue here.

at 7.  The State's speculative reading also runs head-long into COPPA's plain text and disregards well-established cannons of statutory interpretation.  *See* Mot. at 8-13.  In sum, Section 6502(c) *as drafted* requires this Court to "treat" the State's COPPA claim as an analogous FTC Act claim.[5]  Here, Rovio requests the Court to do just that—nothing more, nothing less.[6]

**B.      Section 6502(c) Requires the Application of the FTC Act's Limitations Period.**

The State's Response does not dispute that, if the FTC Act's three-year statute of limitations applies, Rovio's alleged conduct prior to August 25, 2018 (three years before the State filed suit) would not be actionable under COPPA.  Instead, the State argues that (i) the Court cannot partially dismiss a claim, (ii) "Rovio cannot import limitations from the FTC Act into a distinct section of COPPA," and (iii) the *nullum tempus* doctrine prevents limitations from applying.[7]  Resp. at 10-11.  The State's arguments miss their mark.

---

[5] The State's Response also suggests that Rovio is somehow arguing that Section 6502(c) permits the State to enforce COPPA through the FTC Act.  *See* Resp. at 7.  To be clear, Rovio does not make that argument.  Instead, Rovio relies on COPPA's plain text requiring that a COPPA claim be "treated" as an FTC Act claim and the numerous court decisions applying provisions of the FTC Act (e.g., limitations) to non-FTC-Act claims based on similar language.  *See* Mot. at 9.

[6] The State suggests that "if [Rovio] were correct, . . . then the State would be entitled to civil penalties of $46,517 per COPPA violation just like the FTC."  Resp. at 10 n.7.  Not so.  First, the plain, unambiguous language in the FTC Act makes clear that the civil penalty provision applies only to the FTC (i.e., the "commission").  *See* 15 U.S.C. § 45(l), (m).  Second, Section 6502(c)'s requirement to "treat" the State's COPPA claim like an FTC Act claim does not turn the State's COPPA claim into an FTC Act claim, nor could treating the State's COPPA claim like an FTC Act claim grant the State any authority beyond that which Congress expressly grants.  The "shall be treated as" language in Section 6502(c) limits—not expands—the State's COPPA claim.

[7] Confusingly, the State claims that "Rovio fundamentally misconstrues the statute of limitations applicable to COPPA actions by the FTC pursuant to the FTC Act" because (i) "there is no limitations period for actions by the FTC for equitable relief under COPPA", and (ii) "COPPA claims for civil penalty by the FTC under Section 5(m)(1)(A) are subject to a five-year statute of limitations."  Resp. at 9 n.5.  This is a non-sequitur.  First, the FTC Act's three-year statute of limitations should not affect a claim for prospective injunctive relief (seeking to enjoin current and

First, the State's argument against partial dismissal fails to respond to—let alone acknowledge—the recent precedent from New Mexico federal courts expressly permitting and granting partial dismissals of claims on statute of limitations grounds *at the motion to dismiss stage*. *See* Mot. at 12-13 (citing *Rowland v. Bd. of Cnty Comm'rs. for Cnty of Curry*, 2020 WL 5705912, at *3 (D.N.M. Sept. 24, 2020); *In re Vaughan Co., Realtors*, 477 B.R. 206, 216 (Bankr. D.N.M. 2012)).  Ignoring this precedent and delaying application of the statute of limitations until summary judgment would be inequitable given the unreasonably broad scope of the State's claims and, as Magistrate Judge Wormuth acknowledged in *Rowland*, the burdensome discovery that could result should those claims remain unconstrained.[8]

Second, the State's argument that "Rovio cannot import limitations from the FTC Act into a distinct section of COPPA" misreads the situation.  Rovio did not import the FTC Act's three-year limitations period, *Congress did*.  Thus, the State's argument that "[h]ad Congress intended to include a statute of limitations applicable to actions by states, 'it presumably would have done so expressly'" misses the point.  By mandating FTC-Act-treatment of COPPA claims, *Congress did* "do so expressly."  And, again, Courts have repeatedly applied this same FTC-Act-treatment in other analogous circumstances.  *See* Mot. at 9 (citing cases).

Finally, the State misapplies the *nullum tempus* doctrine, which does not apply to its COPPA claim on its face.   Under the State's own precedent, the *nullum tempus* doctrine does not

---

future alleged conduct, not purported conduct 13 years in the past).  Second, the State is not seeking civil penalties under COPPA in this case (nor could it, *see supra* n.6).

[8] It is undisputed that the State's allegations encompass purported conduct by Rovio on a global scale going back at least 13 years.  Applying a 3-year limitations period therefore reduces the relevant time period by more than 75 percent—drastically limiting the scope of potential discovery should this case proceed.

apply when a statute provides for the application of a limitations period, *see State v. Roy*, 1937-NMSC-026 ¶ 4, 41 N.M. 308; here, COPPA's express text requires the application of the FTC Act's three-year limitations period.  Further, New Mexico's *nullum tempus* doctrine, a **state** policy, cannot defeat an express **federal** statute of limitations, *see* U.S. Const. art. VI, cl. 2.

### C.    The State is Not Entitled To Punitive Damages and Attorneys' Fees.

Rovio is entitled to dismissal of the State's request for punitive damages and attorneys' fees under COPPA because such remedies are not recoverable under COPPA as a matter of law.[9] Mot. at 13-14.  It is "is not premature" to eliminate various remedies at this stage when, like here, a plaintiff "cannot recover certain items listed in [its] prayer for relief as a matter of law and allowing discovery is likely to cause prejudice to Defendant."  *Nelson*, 2021 WL 6196963, at *1.[10] Permitting the State to maintain requests for punitive damages and attorneys' fees when it has no legal basis for doing so potentially emboldens the State to seek improper and intrusive discovery into, *inter alia*, both Rovio's and its counsel's financials and business arrangements.  *See id.* (striking claims for punitive damages and attorneys' fees at the motion to dismiss stage, finding that delaying a ruling until a later stage would unnecessarily "open the door to discovery on Defendant's net worth and financials" and "is likely to cause prejudice to Defendant").

---

[9] If, for any reason, the Court determines that Rule 12(b)(6) is not the appropriate vehicle to seek dismissal of the State's claims for punitive damages and attorneys' fees, Rovio requests, alternatively, that the Court construe its request as a motion to strike such relief under Rule 12(f). *See Nelson v. Kansas Cnty. Ass'n Multiline Pool*, No. 21-CV-2374-JAR-GEB, 2021 WL 6196963, at *1 (D. Kan. Dec. 30, 2021) ("The Court . . . instead construes Defendant's motion as a motion to strike under Rule 12(f), as requested in the reply."); FED. R. CIV. P. 12(f).

[10] *See also Hernandez v. United States*, No. CV 21-0738 JHR/KK, 2022 WL 376318, at *3 (D.N.M. Feb. 8, 2022); *Iowa Network Servs. Inc. v. Level 3 Comm'ns LLC*, No. 15-CV-00698-REB-MJW, 2016 WL 8672999, at *4 (D. Colo. Mar. 18, 2016).

In addition, the State's argument that 15 U.S.C. § 6504(a)(1)(D)'s reference to "such other relief as the court may consider to be appropriate" permits such relief misconstrues the interplay between COPPA and Section 57b(b) of the FTC Act.[11]  Reading Section 6504 and Section 57b(b) of the FTC Act together demonstrates that Section 6504's reference to "other appropriate relief" must be limited by Section 57b(b)'s prohibition on punitive damages, as that puts Congress's regulatory scheme "into a[] harmonious whole." *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).[12]

## III.   COPPA Preempts The State's NMUPA and Intrusion Upon Seclusion Claims.[13]

### A.   The State's Version of COPPA Preemption is Inconsistent With Federal Law.

Express COPPA preemption applies when state law and federal law under COPPA treat the defendant's conduct differently such that any aspect of a defendant's liability varies according to which law applies. 15 U.S.C. § 6502(d); *see also Hubbard v. Google*, 508 F. Supp. 3d 623, 630-32 (N.D. Cal. 2020).  "Different treatment resulting in inconsistent liability has been found where state-law and COPPA claims are bound by distinct **procedures**, subject to separate **limitations**, or produce different **remedies**."  Mot. at 15 (emphasis added).  Notably, in the *Tiny Lab* case, the

---

[11] The State's argument is also misleading. Both of the decisions cited by the State (*Mut. Serv. Corp. v. Spaulding,* 972 F. Supp. 1126, 1127 (N.D. Ill. 1997), and *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 (1995)) are inapposite, as they involved language in arbitration agreements and, as the Court in *Spaulding* cautioned, "it is commonplace to leave the arbitrators pretty much at large in the formulation of remedies."  *Spaulding*, 972 F. Supp. at 1127.

[12] The State's reading of "appropriate relief" also contravenes the American Rule on attorneys' fees and the well-settled rule that attorneys' fees are available only where specifically authorized. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015).

[13] Contrary to the State's assertion, the presumption against preemption does **not** apply when the federal statute at issue contains an express preemption clause.  *Puerto Rico v. Franklin California Tax-Free Tr.,* 579 U.S. 115, 125 (2016).  The State's suggestion that the presumption against preemption applies to this matter "with particular force" (Resp. at 13-14) is therefore baseless.

State itself argued—consistent with Rovio's position—that "express preemption only applies when a state law seeks to '***impose requirements in addition to or different from those under the [federal] statute***.'"  State's Opp. to the SDK Defs.' Mot. to Dismiss [Dkt. 65], Mar. 12, 2019, *Tiny Lab*, No. 1:18-cv-854-MV-KBM (emphasis added).

Here, the State adopts a markedly narrower approach to preemption than it advocated for in *Tiny Lab*, now suggesting that COPPA ***only*** preempts state law claims where a defendant's conduct is not prohibited under COPPA but is prohibited under state law—regardless of whether a COPPA claim is subject to more restrictive procedures or permits fewer remedies than do state-law claims, for example.  Resp. at 14-15.[14]  In doing so, the State asks the Court to drastically rewrite Section 6502(d) based on a faulty legal premise and an erroneously narrow construction.

The plain text of Section 6502(d)—COPPA's preemption provision (below)—undermines the State's narrow construction, as it expressly requires the Court to compare the ***imposition of liability under state law***, on the one hand, and ***treatment under COPPA***, on the other:

**15 U.S.C. § 6502**[15]

> **(d) Inconsistent State law**
>
> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

---

[14] The State also argues that it is possible to comply with both COPPA and the state laws at issue and that those laws do not stand as an obstacle to Congress's objectives.  Resp. at 15.  But those issues relate only to the doctrine of implied preemption, which Rovio does not contend applies.

[15] Emphasis added.

Swapping out the word "treatment" for the word "liability," as the State suggests, directly contravenes Section 6502(d)'s express language and impermissibly invites the Court to judicially rewrite COPPA.  In sum, Section 6502(d) does ***not*** compare liability under state law to liability under federal law; it compares liability under state law to "treatment" under federal law.

Further, the State's (now) purportedly narrow construction of COPPA preemption is inconsistent with, and contradicted by, clear recent federal precedent.  In *Hubbard v. Google LLC*,[16] the court found COPPA's express preemption provision required the dismissal of the plaintiff's state-law claims for intrusion upon seclusion and violations of unfair competition and consumer protection statutes because (as Rovio argues here) COPPA imposes a distinct ***remedial scheme*** with different ***procedural requirements*** than those imposed by state-law claims at issue— even though (as the State contends here) the plaintiff's state-law claims were based on the same conduct that COPPA prohibited.  508 F. Supp. 3d 623, 630-32 (N.D. Cal. 2020).  As that court noted, "Congress was clear when it decided how violations of COPPA should be treated."  *Id.* at 630. "This scheme is clear, detailed, and ***does not leave room for state laws to impose additional***

---

[16] The State suggests that *Hubbard* somehow "negates" Rovio's argument because (i) *Hubbard* did not involve claims filed by a state attorney general, and (ii) *Hubbard* did not involve alleged deception.  Resp. at 14.  The State's position is misguided, for two reasons:

***First***, Rovio cites *Hubbard* for how the court conducted its thorough preemption analysis and construed the scope of COPPA preemption—which bears directly on this matter—not because the Court found preemption based on the procedural differences at issue in that case.

***Second***, the fact that *Hubbard* did not involve allegations of deception is irrelevant.  In *Hubbard*, the court distinguished its holding from other circumstances where preemption was not found because the state-law claims in those other actions were based on alleged deception (conduct that went "beyond the provisions of COPPA").  508 F.3d at 631-32.  Here, the State concedes in its Response that its state-law claims seek to impose liability "***only*** for conduct that violates COPPA." Resp. at 15 (emphasis added). Accordingly, the State's concession not only "negates" its attempt to distinguish *Hubbard*, it actually strengthens *Hubbard's* connection to this case.

*liability*." *Id.* at 630 (emphasis added).  Here, as *Hubbard* makes clear, COPPA preemption applies

to, and requires dismissal of, the State's state-law claims as they differ from COPPA's remedial

scheme and procedural requirements.[17]  *Id.*

### B.      Construed Properly, COPPA Preemption Applies.

Rovio identifies at least five areas where the State's state-law claim impose liability

differently than COPPA's treatment of Rovio's alleged conduct.  Mot. at 16-17.  The State's

Response largely ignores the areas Rovio identifies, clinging instead to its myopic construction of

the scope of COPPA preemption.  Resp. at 15-16.  But it is clear that the areas that Rovio set forth

reflect real instances where the State's state-law claims impose liability in a manner ***inconsistent***

with COPPA's treatment of Rovio's alleged conduct.   Mot. at 17 (identifying different and

additional requirements, remedies, and liability).[18]

The divide between the State's state-law and COPPA claims is most evident with regard

to the statute of limitations.  If limitations apply, the State's state-law claims indisputably purport

to hold Rovio accountable for conduct that is not actionable under COPPA (i.e., alleged conduct

outside the 3-year limitations period).   *Id.*   Even under the State's narrow view of COPPA

preemption, that difference necessitates a finding of preemption.

---

[17]  The State misleadingly suggests that the *Tiny Lab* court "rejected the same preemption arguments in the same context."  Resp. at 14.  The primary issue in *Tiny Lab* (**which was decided before** **Hubbard**) was COPPA's "actual knowledge" requirement and the differences between it and the knowledge standards applicable to NMUPA and intrusion upon seclusion claims.  *See Tiny Lab*, 457 F. Supp. 3d at 1120-21.  But here, Rovio does not argue for preemption on that basis.

[18]  The State cites a ***pre-COPPA*** Supreme Court decision for the proposition that "nothing in COPPA denies a state the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements."  Resp. at 15-16 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996)).  Given that *Medtronic* was decide before COPPA became law, and dealt with another federal law with materially distinct language, that decision is inapposite.

C.      **The State Fundamentally Misunderstands the Impact of COPPA Preemption.**

The State's Response repeatedly characterizes Rovio's Motion as a "series of limited challenges to the margins of the Complaint" and suggests that a ruling on one aspect of the State's Complaint has no effect on its other parts. *See, e.g.*, Resp. at 1, 6.  The State's characterizations are based on a misunderstanding of the governing law.

In its Motion, Rovio emphasizes that, "[g]iven the effect of COPPA's express preemption provision[,] . . . dismissal of the State's COPPA claim"—in whole or in part—"mandates the corresponding dismissal of the State's NMUPA and intrusion upon seclusion claims." Mot. at 17-18.  In *Tiny Lab*, for example, the Court dismissed the State's ***state-law*** claims against certain SDK defendants as preempted by COPPA because it found that the State failed to properly plead an element of the State's ***COPPA*** claim against those defendants, explaining:

> ***[B]ecause Plaintiff's COPPA claim fails*** as to the SDK Defendants for lack of actual knowledge, and because COPPA preempts state law that treats like conduct differently, ***Plaintiff's state law claims equally must fail*** for lack of actual knowledge. . . . Plaintiff's state law claims under the UPA and the common law tort of intrusion on seclusion . . . ***thus will be dismissed as to the SDK Defendants***.

*New Mexico ex rel. Balderas v. Tiny Lab Productions,* 457 F. Supp. 3d 1103, 1121 (D.N.M. 2020) (emphasis added).  Notably, the State neither opposes nor disputes this point—indeed, the State apparently agrees with it.  *See* Resp. at 13.

This undisputed point of law (that dismissal of a COPPA claim mandates dismissal of corresponding state-law claims) is fundamental to the Court's determination of Rovio's Motion, as (i) dismissal of the State's COPPA claim for lack of standing ***requires*** dismissal of the State's state-law claims or, alternatively, (ii) to the extent any aspect of the State's COPPA claim survives,

the statutory limits imposed by COPPA (e.g., 3-year statute of limitations and exclusion of punitive damages and attorneys' fees) ***must apply*** with equal force to the State's state-law claims.

## IV.  <u>The State Fails to Properly Plead its NMUPA and Intrusion Claims.</u>[19]

Rovio's Motion requests dismissal of the State's NMUPA claims under Rule 12(b)(6) because, *inter alia*, the Complaint "fails to properly allege that any children under the age of 13 purchased, downloaded, or otherwise transacted for any of Rovio's products in New Mexico"— i.e., failed to plead the "in connection with the sale, lease, rental or loan of goods or services" element of an NMUPA claim.  Mot. at 20 (emphasis omitted).  The State's failure to properly plead that element is fatal to its entire NMUPA claim, regardless of whether based on allegations of "unfair or deceptive trade practices" or "unconscionable trade practices."  *See* NMSA 1978, §§ 57-12-2(D), (E) (1967) (element required to establish both types of trade practices).

In response, the State provides only a single sentence complaining—without specific support—that "[t]his is a gross distortion of the Complaint."  Resp. at 17.  Of course, the State fails to quote from (let alone identify) a single concrete, fact-specific, and particularized allegation in its Complaint that any children under the age of 13 purchased, downloaded, or otherwise transacted for any of Rovio's products in New Mexico.  Given that the State is unable to point to even a

---

[19] Given the disconnect between the Complaint's language (clearly indicating the State's contention that a COPPA violation is a *per se* violation of the NMUPA, *see, e.g.*, Compl. at ¶¶ 179-180), and the State's judicial admission that it is not pursuing a *per se* theory, *see* Resp. at 16-17, Rovio requests that the Court enter an order (i) dismissing the State's NMUPA claim to the extent it relies on a *per se* liability theory and/or (ii) finding that the State is estopped from contending otherwise at any later juncture, should the case proceed.

single, factually-specific and particularized pleaded allegation, the Court must dismiss the State's

NMUPA claim.  FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**V.      The State's Intrusion Upon Seclusion Claim is Legally Deficient.**

      **A.      The State's Allegations Do Not Constitute "Highly Offensive" Conduct.**

The State's response to Rovio's argument regarding the State's intrusion upon seclusion

claim fails to address the crux of Rovio's argument—namely, that "COPPA does not prohibit the

collection of children's data generally, it merely provides a process for doing so in certain

circumstances."  Mot. at 25 (emphasis omitted).  Not only does the federal government expressly

authorize the practice of collecting children's data generally, but ***COPPA expressly permits such***

***collections without notice or parental consent in certain circumstances***—including, most

notably, for some forms of advertising.  *See* 16 C.F.R. §§ 312.2; 312.5(c)(7).  As a federally

authorized practice, the collection of data from children under the age of 13, with or without notice

and/or parental consent, therefore simply (i) ***cannot*** credibly be considered "highly offensive"

conduct, and (ii) ***cannot*** form the basis of the State's intrusion upon seclusion claim.[20]

The State's Response also provides no legal or factual basis for the proposition that the

failure to provide notice and/or receive parental consent—again, separate and apart from the act

of collecting data—is "highly offensive" conduct sufficient to constitute intrusion upon seclusion.

The State provides virtually no argument relating to, for example, whether the mere failure to

provide notice and/or receive parental consent by itself (i) "substantially interferes with a

---

[20] Moreover, were the Court to find that the collection of data from children under the age of 13, by itself or coupled with a lack of notice and/or parental consent, was "highly offensive" as a matter of law, the Court would be imposing liability for conduct that, in some instances, COPPA permits—a result that COPPA's express preemption provision unquestionably does not permit. *See* 15 U.S.C. § 6502(d); *supra* Argument Section III.

plaintiff's seclusion," (ii) is "highly offensive to the ordinary reasonable man," (iii) is "one to which the reasonable man would strongly object," and/or (iv) is "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff that becomes a substantial burden to his existence." *See* Mot. at 21. Those essential elements remain unaddressed by the State. Instead, the State continues to improperly focus on the fact of data collection and alleged post-collection data use—irrelevant and impermissible bases for intrusion upon seclusion. *See id*.

In addition, the State's reliance on the *McDonald* and *Tiny Lab* decisions is unavailing as neither the parties in *McDonald* nor in *Tiny Lab* litigated (nor did the respective courts analyze) the issue of whether the failure to receive parental consent is, by itself, highly offensive conduct. Rather, the parties in both cases only disputed (and the respective courts only resolved) whether "allegations of electronic information **collection** are sufficient to state an intrusion upon seclusion claim" based on "**what** data was secretly collected, **how** the collection was done, and **how** the harvested data was **used**." *Tiny Lab*, 457 F. Supp. 3d at 1125-26 (emphasis added); *accord McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035 (N.D. Cal. 2019). As the failure to obtain parental consent itself is not, and cannot be, "highly offensive," the State's claim must fail.

**B.     The State's Response Fails to Support its Request for Injunctive Relief.**

Finally, Rovio requests the Court to dismiss the State's claim for injunctive relief relating to its intrusion upon seclusion claim based on the State's failure to properly plead the elements of that claim. Mot. at 26. In its Response, the State merely asserts that its Complaint is sufficient without identifying any concrete, particularized factual allegations to support each element. *See* Resp. at 23-24. The Court should therefore dismiss the State's claim for injunctive relief relating to its intrusion upon seclusion claim.

Dated: May 4, 2022.                    Respectfully Submitted,

                                        BROWNSTEIN HYATT FARBER SCHRECK, LLP

                                        By */s/ Eric R. Burris*
                                            Eric R. Burris
                                            Debashree ("Reema") Nandy
                                            Joseph C. Haupt
                                            201 Third Street NW, Suite 1800
                                            Albuquerque, NM 87102
                                            Telephone:   (505) 244-0770
                                            Facsimile:  (505) 244-9266
                                            E-mail: eburris@bhfs.com
                                            rnandy@bhfs.com
                                            jhaupt@bhfs.com

                                        NORTON ROSE FULBRIGHT US LLP

                                        Jason K. Fagelman (admitted *pro hac vice)*
                                        Philip A. Tarpley (admitted *pro hac vice*)
                                        Megan J. Soliz (admitted *pro hac vice*)
                                        2200 Ross Avenue, Suite 3600
                                        Dallas, TX 75201-7932
                                        Telephone:    (214) 855-8000
                                        Facsimile:    (214) 855-8200
                                        E-mail: jason.fagelman@nortonrosefulbright.com
                                        philip.tarpley@nortonrosefulbright.com
                                        megan.soliz@nortonrosefulbright.com

                                        Chris Cwalina (*pro hac vice* application to be filed)
                                        799 9th Street NW, Suite 1000
                                        Washington, DC 20001-4501
                                        Telephone:    (202) 662-0200
                                        Facsimile:    (202) 662-4643
                                        E-mail: chris.cwalina@nortonrosefulbright.com

Steven Roosa (*pro hac vice* application to be filed)
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone:     (212) 318-3000
Facsimile:     (212) 318-3400
E-mail: steven.roosa@nortonrosefulbright.com

*Attorneys for Defendant Rovio Entertainment Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 4, 2022, a true and correct copy of the foregoing DEFENDANT ROVIO ENTERTAINMENT CORP.'S REPLY IN SUPPORT OF ITS RULE 12(b)(1) and 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT [Dkt. 32] was filed electronically pursuant to CM/ECF procedure for the United States District Court for the District of New Mexico, which caused the parties to be served via electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Eric R. Burris*
Eric R. Burris